UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOE ABENE ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-143** |
| | * | |
| **JAYBAR, LLC ET AL.** | * | **SECTION "L"(2)** |

## ORDER & REASONS

Before the Court is a Motion for Partial Dismissal (Rec. Doc. No. 28) filed by Defendants Jaybar, LLC, Mazama, LLC, Reggie Harper, Terry King, Pamela King, and Northshore Financial, LLC; a Motion to Strike (Rec. Doc. No. 32) filed by Intervenor-Plaintiff Martha Temples; and a Motion for Sanctions (Rec. Doc. No. 41) also filed by Intervenor-Plaintiff. The Court has reviewed the submitted memoranda and the applicable law. For the following reasons, the Motion for Partial Dismissal is **GRANTED**, the Motion to Strike is **DENIED AS MOOT IN PART AND DENIED IN PART**, and the Motion for Sanctions is **DENIED**.

## I. BACKGROUND

This case arises out of the sale of allegedly fraudulent securities by Defendant William Chaucer. According to Plaintiffs,[1] Chaucer owned and operated six entities (hereinafter "Chaucer entities"),[2] which engaged in the advertising and sale of securities. Plaintiffs state that neither Chaucer nor any other representative of the Chaucer entities was registered to undertake such

---

[1] Fifty-two plaintiffs joined in this suit prior to its removal to this Court.

[2] The entities are Defendants Chaucer Holding Company, LLC; Chaucer Financial Services of Hammond, Inc.; City Credit of Pontchatoula, Inc.; American Credit of Hammond, Inc.; American Credit of Covington, Inc.; and American Credit of Slidell, Inc.

1

activities. Plaintiffs also state that when they bought the securities from the Chaucer entities, they were unaware of this fact. Through the sale of these fraudulent securities, Plaintiffs aver, Chaucer and the Chaucer entities were able to acquire a substantial amount of assets.

Plaintiffs allege that Defendant Reggie Harper organized Defendant Mazama, LLC in 2002 and Defendant Jaybar, LLC in 2006. According to Plaintiffs, both corporations were organized to help finance the Chaucer entities by purchasing securities sold by those entities. Plaintiffs state that in his capacity as president and chief executive officer of Defendant First Community Bank, Harper also helped to secure loans for Mazama and Jaybar to enable them to purchase securities from the Chaucer entities. At all relevant times, Plaintiffs indicate, Harper was a manager of the Chaucer entities and of Mazama and Jaybar.

According to Plaintiffs, in 2006 the Chaucer entities and Jaybar entered into a "loan and security" agreement pursuant to which Jaybar provided financing to the Chaucer entities. The agreement allegedly prohibited the Chaucer entities from using the capital obtained to satisfy the maturing securities and improperly gave Jaybar a security interest in the assets of the Chaucer entities. At some point, according to Plaintiffs, Jaybar acted on its security interest, seized the assets of the Chaucer entities, and transferred them to another entity that it organized, Defendant Northshore Financial, LLC. Plaintiffs claim that they have been harmed by the fraudulent scheme perpetrated by Chaucer and the Chaucer entities and that the aforementioned dealings also render the remaining Defendants liable for their damages.

Over the objection of Plaintiffs, Intervenor-Plaintiff was granted leave to intervene in this matter. In her amended intervenor complaint, Intervenor-Plaintiff has adopted, in large part, Plaintiffs' allegations. She has also added the allegation that both William Chaucer and his

spouse, Cheryl Chaucer, pled guilty to criminal violations of state securities law in state court. Intervenor-Plaintiff has also named Ms. Chaucer as an additional defendant, and she has asserted several claims that Plaintiffs did not themselves state in their complaint. These additional claims include ones under the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA), La. Rev. Stat. Ann. § 51:1401 *et seq.* Intervenor-Plaintiff has also requested that this matter be certified as a class action under Federal Rule of Civil Procedure 23. In their answer, Defendants Jaybar, Mazama, Reggie Harper, Terry King, Pamela King, and Northshore Financial have denied liability.[3]

## II. PRESENT MOTIONS

Defendants Jaybar, Mazama, Reggie Harper, Terry King, Pamela King, and Northshore Financial have now filed a Motion for Partial Dismissal (Rec. Doc. No. 28). These defendants specifically seek the dismissal of the federal RICO and LUTPA claims that Intervenor-Plaintiff has asserted against them. Defendants argue that the federal RICO claims are barred because under the Private Securities Litigation Reform Act of 1995, securities fraud cannot serve as a predicate for a private cause of action under RICO. *See* 18 U.S.C. § 1964(c). With respect to Intervenor-Plaintiff's LUTPA claims, Defendants argue that LUTPA does not permit class actions for damages, that Intervenor-Plaintiff's LUTPA claims are perempted, and that only a direct consumer or business competitor of a defendant may assert a LUTPA claim.

Intervenor-Plaintiff opposes the Motion for Partial Dismissal. With respect to her federal

---

[3] Defendants William Chaucer, Cheryl Chaucer, and the Chaucer entities have not made an appearance in this matter.

RICO claims, Intervenor-Plaintiff argues that there is an exception to the bar against RICO claims premised on securities fraud and that this exception is applicable to this case. With respect to her LUTPA claims, Intervenor-Plaintiff concedes that LUTPA bars class actions for damages. But she argues that the statute has been interpreted to allow class actions for restitution. Intervenor-Plaintiff also states that she is seeking class action certification only with respect to her federal RICO claims. She contends that accordingly, neither her federal RICO claims nor her LUTPA claims should be dismissed.

Separately, Intervenor-Plaintiff has filed a Motion to Strike (Rec. Doc. No. 32). Intervenor-Plaintiff asserts that several affirmative defenses and allegations made by Defendants in their answer to her complaint are conclusory. Intervenor-Plaintiff has also filed a Motion for Sanctions (Rec. Doc. No. 41). Intervenor-Plaintiff states that there is no legal basis for Defendants' contention that she does not have a federal RICO claim against them and that sanctions should be imposed on Defendants and their counsel for making the assertion.

Defendants oppose both of Intervenor-Plaintiff's motions. Defendants argue that Intervenor-Plaintiff has not adequately justified her request for an order striking their affirmative defenses and allegations. Defendants also reject the notion that with respect to Intervenor-Plaintiff's federal RICO claims, they have made an argument that is so lacking in legal basis that it warrants the imposition of sanctions.

## III. LAW AND ANALYSIS

### A. Defendants' Motion for Partial Dismissal

#### 1. Standard of Review

When a court considers a motion to dismiss for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

**2. Intervenor-Plaintiff's Federal RICO Claim**s

In enacting the Private Securities Litigation Reform Act of 1995, Congress amended the federal RICO statute to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of" RICO. 18 U.S.C. § 1964(c). The amendment also states that this bar "does not apply to an action against any person that is criminally convicted in connection with the fraud." *Id.* In their motion to dismiss, Defendants argue that Intervenor-Plaintiff's RICO claims are barred by the amendment. Defendants assert that the claim is premised on securities fraud and that the exception to the bar does not apply because they themselves have not been convicted of any crime in connection with the fraud. In her opposition, Intervenor-Plaintiff concedes that securities fraud forms the basis of

5

her RICO claim, but she argues that the exception to the bar operates to save her claims.[4]

Although the Fifth Circuit has acknowledged that RICO does not generally authorize a private cause of action based on securities fraud, *see Affco Inv. 2001, LLC v. Proskauer Rose, LLP*, 625 F.3d 185, 189 (5th Cir. 2010), it has yet to elaborate on the scope of the exception to that bar. Other courts, however, have had the chance to examine this question, and they have concluded that the exception is narrow in scope. The exception, these courts have held, applies only to preserve those civil RICO claims that are specifically asserted against a defendant that has been criminally convicted in connection with the alleged securities fraud. *See, e.g.*, *Powers v. Wells Fargo Bank, N.A.*, 439 F.3d 1043, 1046 (9th Cir. 2006); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 623-24 (S.D. Tex. 2003) [hereinafter *Enron Corp.*]; *Krear v. Malek*, 961 F. Supp. 1065, 1076 (E.D. Mich. 1997).

The Court finds these decisions to be persuasive. First, the "plain language" of the statute indicates that the exception extends only to claims insofar as they are asserted against a defendant that has been criminally convicted. *Krear*, 961 F. Supp. at 1076; *accord Powers*, 439 F.3d at 1046 (noting that the statute "by its terms only permits RICO claims against a defendant convicted in connection with the securities fraud"). As noted above, the statute provides that the bar "does not apply to an action against any person that is criminally convicted in connection with the fraud." 18 U.S.C. § 1964(c). "The language of [this] exception is plain and unambiguous." *Enron Corp.*, 284 F. Supp. 2d at 623-24. It "does not permit RICO claims against

---

[4] In her briefs, Intervenor-Plaintiff has spent quite some time arguing that there is liability for aiding and abetting under RICO. This discussion, it should be noted, is besides the point. Regardless of whether there is aiding and abetting liability under the substantive provisions of RICO, 18 U.S.C. § 1962, there remains the threshold question of whether RICO itself permits a private cause of action predicated on securities fraud, *see id.* § 1964(c).

all defendants involved in a [securities] fraud merely because one or more of them is convicted." *Powers*, 439 F.3d at 1046.

Second, any doubt as to the scope of the exception is eliminated once the legislative history is taken into account. Indeed, before adopting the current provision, Congress considered a more expansive version of the exception, one that would have preserved a civil RICO claim predicated on securities fraud "if *any* participant in the fraud [were] criminally convicted in connection therewith." *Enron Corp.*, 284 F. Supp. 2d at 623 (emphasis added). Congress's decision to reject this broader language underscores its intent to allow a civil RICO claim that is premised on securities fraud only to the extent that it is asserted "against the person who was actually criminally convicted." *Id.* This accords with the overriding purpose that motivated Congress to amend the federal RICO statute – to shift the focus of the legislation back to organized crime and to help ensure that securities fraud does not form the basis for civil liability under RICO. *See Krear*, 961 F. Supp. at 1075-76.

The only colorable argument that Intervenor-Plaintiff has made for the contrary conclusion is that the Supreme Court has once noted that "RICO is to be read broadly," particular with respect to its provisions that govern private rights of action. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985). It suffices to note, however, that the Supreme Court made this observation prior to the amendment of RICO in 1995 and that in enacting the Private Securities Litigation Reform Act of 1995, Congress was responding to the fact that "a statute designed to apply to racketeering and organized crime" was apparently applied in 40 percent of the cases "to securities lawsuits." *Krear*, 961 F. Supp. at 1075 n.16 (internal citation and quotation marks omitted). Intervenor-Plaintiff's argument is not consistent with the

congressional purpose behind the 1995 amendments to RICO. And ultimately, it cannot be reconciled with the plain language of the statute. *Powers*, 439 F.3d at 1046.

In sum, the plain language and the legislative history of the criminal conviction exception both compel the conclusion that the exception applies only to preserve those civil RICO claims that are specifically asserted against a defendant that has been criminally convicted in connection with the alleged securities fraud. *Accord Powers*, 439 F.3d at 1046; *Enron Corp.*, 284 F. Supp. 2d at 623-24; *Krear*, 961 F. Supp. at 1076. In this case, Intervenor-Plaintiff has not alleged in her complaint that any of the Defendants that have moved to dismiss the federal RICO claims that she has asserted against them have been criminally convicted in connection with the alleged securities fraud. With respect to these Defendants, then, Intervenor-Plaintiff has failed to state a federal RICO claim for which relief can be granted. Accordingly, Defendant's request that this Court dismiss the federal RICO claims that Intervenor-Plaintiff has asserted against them must be granted.

### 3. Intervenor-Plaintiff's LUTPA Claims

Defendants have also moved to dismiss the claims that Intervenor-Plaintiff has brought against them under the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA), La. Rev. Stat. Ann. § 51:1401 *et seq.* In support of this request, Defendants have made three arguments: first, that LUTPA bars class actions for damages; second, that the LUTPA claims are perempted; and third, that only the consumer or business competitor of a defendant may assert a LUTPA claim. Intervenor-Plaintiff argues that her LUTPA claims should not be dismissed, but in her opposition, she has addressed only the first argument that Defendant has presented. In doing so, Intervenor-Plaintiff has added confusion to the issue: notwithstanding

her complaint, which clearly indicates that she seeks class certification with respect to all of the claims that she has made in this case, Intervenor-Plaintiff now states that her class certification request applies only to her federal RICO claim.

The Court need not address the dispute regarding Defendants' first argument. Indeed, the second argument that Defendants have made in support of their motion is sound and, of its own force, warrants the dismissal of Intervenor-Plaintiff's LUTPA claims as asserted against Defendants. Both the federal and the Louisiana intermediate appellate courts have consistently recognized that the one-year time limitation for a LUTPA claim, *see* La. Rev. Stat. Ann. § 51:1409(E), is peremptive in nature. *See, e.g.*, *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp., Inc.*, 292 F.3d 471, 481 n.4 (5th Cir. 2002); *Carriere v. Jackson Hewitt Tax Serv. Inc.*, 750 F. Supp. 2d 694, 705 (E.D. La. 2010); *Morris v. Sears, Roebuck & Co.*, 765 So.2d 419, 422 (La. Ct. App. 4th Cir. 2000). Although the Louisiana Supreme Court has yet to weigh in on this question, *see Miller v. Conagra, Inc.*, 991 So.2d 445, 455-56 (La. 2008) (reserving the issue), Intervenor-Plaintiff has offered no reason for this Court to believe that the Louisiana Supreme Court would reach a different conclusion. Indeed, as noted above, Intervenor-Plaintiff has failed entirely to contest Defendants' second argument. Consistent with the case law, the Court therefore holds that the one-year time limitation for a LUTPA claim is peremptive in nature.

If the time limitation is prescriptive, then the doctrine of *contra non valentem* may apply to suspend prescription if "the cause of action is neither known nor reasonably knowable by the plaintiff." *Renfroe v. State ex rel. Dep't of Transp & Dev.*, 809 So.2d 947, 953 (La. 2002). A time limitation that is peremptive in nature, however, is not subject to suspension, interruption, or renunciation. *State v. McInnis Bros. Constr.*, 701 So.2d 937, 939 (La. 1997) (citing La. Civ.

Code art. 3461). As a consequence, the doctrine of *contra non valentem* is inapplicable in the context of peremption. *Id.* at 940. In this case, Intervenor-Plaintiff alleges in her complaint that the wrongful scheme ended in 2009. But she did not seek to pursue her LUTPA claims until February 2011. More than one year has lapsed, and the doctrine of *contra non valentem* is inapplicable. Accordingly, the LUTPA claims that Intervenor-Plaintiff has asserted against Defendants are perempted and must be dismissed.[5]

## B. Intervenor-Plaintiff's Motion to Strike

Intervenor-Plaintiff has also filed a Motion to Strike certain aspects of Defendants' answer to her complaint. In particular, Intervenor-Plaintiff asks this Court to strike the second, third, fourth, and fifth affirmative defenses pled by Defendants[6] and paragraphs 4, 14, and 15 of the answer. It should be noted that paragraphs 4 and 14 address Intervenor-Plaintiff's allegations with respect to her federal RICO claims, and paragraph 15 concerns Intervenor-Plaintiff's

---

[5] It is not necessary for this Court to discuss Defendants' third argument. Nonetheless, by way of observation, the Court will note that it may no longer be sound. Although many courts have concluded that only a direct consumer or a business competitor has a private right of action under LUTPA, *see Vermilion Hosp., Inc. v. Patout*, 906 So.2d 688, 692 (La. Ct. App. 3d Cir. 2005) (noting that, with limited exceptions, federal and state courts "have uniformly held [that] the personal right of action granted under LUTPA applies only to direct consumers or to business competitors"), the Louisiana Supreme Court has recently weighed in on this issue, and it was evenly divided on this question. *See Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d 1053, 1058 (La. 2010) (plurality opinion); *id.* at 1063-64 (concurring opinions).

[6] The second affirmative defense states that any damages sustained by Intervenor-Plaintiff were proximately caused by the conduct of Intervenor-Plaintiff herself or others over whom Defendants have no control. The third affirmative defense states that Intervenor-Plaintiff has not incurred any damages and that, in the alternative, Intervenor-Plaintiff has failed to mitigate damages. The fourth affirmative defense states that Intervenor-Plaintiffs' claims are "unfounded, groundless and/or unreasonable" as to them. The fifth affirmative defense pleads "comparative negligence, consent, and/or other acts constituting fault or consent" on the part of Intervenor-Plaintiff.

allegations as to her LUTPA claims. As noted above, the Court concludes that those claims are to be dismissed. Accordingly, the issue of whether paragraphs 4, 14, and 15 of the answer should be stricken is now moot. The question narrows down to whether the affirmative defenses should be stricken.

In their opposition, Defendants argue that Intervenor-Plaintiff has not shown sufficient grounds to justify the striking of these affirmative defenses. This contention is sound. Federal Rule of Civil Procedure 12(f) provides that a district court "may strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). The Fifth Circuit has recognized, however, that motions to strike defenses are "disfavored." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). Indeed, "[t]he action of striking a pleading should be sparingly used by courts because it is a drastic remedy . . . ." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 788 (E.D. La. 2010) (internal quotation marks and citations omitted). "[E]ven when technically appropriate and well-founded," motions to strike are not be granted "in the absence of a showing of prejudice to the moving party." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381 (3d ed. 2004); *see also Boyd's Bit Serv., Inc. v. Specialty Rental Tool & Supply, Inc.*, 332 F. Supp. 2d 938, 944 (W.D. La. 2004).

Here, Intervenor-Plaintiff's primary contention is that Defendants have failed to allege specific facts that would support their affirmative defenses.[7] It is true that as pled, the affirmative

---

[7] With respect to the fifth affirmative defense, Intervenor-Plaintiff makes the additional argument that comparative fault is not relevant to a federal RICO claim. As Defendants point out, however, Intervenor-Plaintiff has asserted claims other than a federal RICO claim, and the affirmative defense of comparative fault has been pled with respect to all of Intervenor-Plaintiff's claims in this matter. Intervenor-Plaintiff has not otherwise argued that comparative

defenses are conclusory and thus do not appear to satisfy the pleading standards for defenses. *See* Fed. R. Civ. P. 8(b)(1)(A). The Fifth Circuit has explained that an affirmative defense is "subject to the same pleading requirement as is the complaint" and that a defendant "must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). Intervenor-Plaintiff has not, however, demonstrated that the denial of her motion to strike would be prejudicial to her, and the Court is unable to conclude that prejudice would result from not striking the affirmative defenses.

Indeed, it should be noted that Defendants bear the burden of proving their affirmative defenses. *See, e.g.*, *Ducre v. Mine Safety Appliances*, 963 F.2d 757, 760 (5th Cir. 1992). To the extent that Intervenor-Plaintiff believes that these defenses are completely unfounded, she retains the option, as the case moves forward, of seeking partial summary judgment on them. *See* Fed. R. Civ. P. 56(a). If, at that juncture, Defendants are unable to adduce facts to support the defenses, partial summary judgment would be appropriate. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (holding that summary judgment is appropriate "[i]f the moving party can show that there is no evidence whatever to establish one or more essential elements of a claim on which the [non-movant] has the burden of proof"). In sum, the Court is unable to conclude that Intervenor-Plaintiff has made the requisite showing of prejudice. Accordingly, the Motion to Strike, insofar as it relates to the affirmative defenses, must be denied.

**C. Intervenor-Plaintiff's Motion for Sanctions**

Intervenor-Plaintiff has also filed a Motion for Sanctions under Rule 11. According to

---

fault is irrelevant to all of her remaining claims.

Intervenor-Plaintiff, Defendants' contention that she does not have a federal RICO claim against them is so lacking in legal basis that Defendants and their counsel should be sanctioned for making that assertion. This argument is without merit. Under Rule 11, an attorney who files a motion is required to certify that the legal contentions made in support of the motion are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(2). If an attorney violates this obligation, it is within the discretion of the district court to impose sanctions. *See id.* 11(c)(1); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1336.1 (3d ed. 2004).

In light of the analysis above, the Court is unable to take Intervenor-Plaintiff's request for sanctions seriously. With respect to the federal RICO claims, counsel for Defendants have made not only a reasonable argument, but one that is, in fact, "warranted by existing law." Fed. R. Civ. P. 11(b)(2). Indeed, the courts that have examined the precise issue have reached the conclusion urged by Defendants – namely, that the criminal conviction exception "does not permit RICO claims against all defendants involved in a [securities] fraud merely because one or more of them is convicted." *Powers*, 439 F.3d at 1046. In urging the dismissal of the federal RICO claims asserted against Defendants, counsel for Defendants have complied with their obligations under Rule 11. Intervenor-Plaintiff's Motion for Sanctions must be denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Partial Dismissal (Rec. Doc. No. 28) is hereby **GRANTED**. The federal RICO claims and the LUTPA claims asserted by Intervenor-Plaintiff against Defendants Jaybar, LLC, Mazama, LLC, Reggie Harper, Terry King, Pamela King, and Northshore Financial, LLC are hereby **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Motion to Strike (Rec. Doc. No. 32) is hereby **DENIED AS MOOT IN PART AND DENIED IN PART** as follows. The motion is denied as moot insofar as it seeks an order striking paragraphs 4, 14, and 15 of Defendants' answer. The motion is denied in all other respects.

**IT IS FURTHER ORDERED** that the Motion for Sanctions (Rec. Doc. No. 41) is hereby **DENIED**.

New Orleans, Louisiana, this 13th day of July, 2011.

_____
UNITED STATES DISTRICT JUDGE