UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **AL ALACK ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-143** |
| | * | |
| **JAYBAR, LLC ET AL.** | * | **SECTION "L"(2)** |

## ORDER & REASONS

Before the Court is a Motion to Alter Order (Rec. Doc. No. 46) filed by Intervenor-Plaintiff Martha Temples. The Court has reviewed the submitted memoranda and the applicable law. For the following reasons, the motion is **DENIED**.

## I. BACKGROUND

This case arises out of the sale of allegedly fraudulent securities by Defendant William Chaucer. According to Plaintiffs,[1] Chaucer owned and operated six entities (hereinafter "Chaucer entities"),[2] which engaged in the advertising and sale of securities. Plaintiffs state that neither Chaucer nor any other representative of the Chaucer entities was registered to undertake such activities. Plaintiffs also state that when they bought the securities from the Chaucer entities, they were unaware of this fact. Through the sale of these fraudulent securities, Plaintiffs aver, Chaucer and the Chaucer entities were able to acquire a substantial amount of assets.

Plaintiffs allege that Defendant Reggie Harper organized Defendant Mazama, LLC in

---

[1] Fifty-two plaintiffs joined in this suit prior to its removal to this Court. This case was previously captioned *Joe Abene et al. v. Jaybar, LLC et al.* Following Abene's dismissal of his claims, the caption was changed to *Al Alack et al. v. Jaybar, LLC et al.*

[2] The entities are Defendants Chaucer Holding Company, LLC; Chaucer Financial Services of Hammond, Inc.; City Credit of Pontchatoula, Inc.; American Credit of Hammond, Inc.; American Credit of Covington, Inc.; and American Credit of Slidell, Inc.

2002 and Defendant Jaybar, LLC in 2006. According to Plaintiffs, both corporations were organized to help finance the Chaucer entities by purchasing securities sold by those entities. Plaintiffs state that in his capacity as president and chief executive officer of Defendant First Community Bank, Harper also helped to secure loans for Mazama and Jaybar to enable them to purchase securities from the Chaucer entities. At all relevant times, Plaintiffs indicate, Harper was a manager of the Chaucer entities and of Mazama and Jaybar.

According to Plaintiffs, in 2006 the Chaucer entities and Jaybar entered into a "loan and security" agreement pursuant to which Jaybar provided financing to the Chaucer entities. The agreement allegedly prohibited the Chaucer entities from using the capital obtained to satisfy the maturing securities and improperly gave Jaybar a security interest in the assets of the Chaucer entities. At some point, according to Plaintiffs, Jaybar acted on its security interest, seized the assets of the Chaucer entities, and transferred them to another entity that it organized, Defendant Northshore Financial, LLC. Plaintiffs claim that they have been harmed by the fraudulent scheme perpetrated by Chaucer and the Chaucer entities and that the aforementioned dealings also render the remaining Defendants liable for their damages.

Over the objection of Plaintiffs, Intervenor-Plaintiff was granted leave to intervene in this matter. In her amended intervenor complaint, Intervenor-Plaintiff has adopted, in large part, Plaintiffs' allegations. She has also named Ms. Chaucer as an additional defendant and asserted several claims that Plaintiffs did not themselves state in their complaint. These include ones under the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* In their answer, Defendants Jaybar, Mazama, Reggie Harper, Terry King, Pamela

King, and Northshore Financial have denied liability.[3]

On July 14, 2011, the Court granted a motion for partial dismissal, thereby dismissing with prejudice Intervenor-Plaintiff's RICO claims as asserted against these Defendants. The Court held that these federal RICO claims were barred by the Private Securities Litigation Reform Act of 1995 (PSLRA), which precludes securities fraud from serving as a predicate for a private cause of action under RICO. *See* 18 U.S.C. § 1964(c). The Court further held that Intervenor-Plaintiff could not avail herself of the "criminal conviction" exception to this bar because she did not allege that any of the Defendants that had moved to dismiss the federal RICO claims had been criminally convicted in connection with the alleged securities fraud.

Intervenor-Plaintiff has now filed a Motion to Alter Order (Rec. Doc. No. 46). In her motion, Intervenor-Plaintiff asserts that she has also pled bank fraud as a predicate act for her federal RICO claims and that, accordingly, those claims survive Defendants' motion to dismiss. Intervenor-Plaintiff asks the Court to modify its July 14, 2011 order to preserve her federal RICO claims insofar as they are premised on bank fraud. Defendants oppose Intervenor-Plaintiff's motion. They argue that Intervenor-Plaintiff could have, and should have, raised this contention earlier and that her attempt to revive her federal RICO claims through this new argument is an improper use of a motion under Federal Rule of Civil Procedure 59(e).

## II. LAW AND ANALYSIS

The Federal Rules of Civil Procedure "do not provide for a motion for reconsideration." *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Accordingly, a motion asking

---

[3] Defendants William Chaucer, Cheryl Chaucer, and the Chaucer entities have not made an appearance in this matter.

a court to reconsider one of its previous order is construed either as a motion under Rule 59(e) or a motion under Rule 60(b). *Id.* (citing *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998)). If the motion is filed within 28 days of the order of which the party complains, it is a Rule 59(e) motion; otherwise, it is a Rule 60(b) motion. *Id.*[4] In this case, Intervenor-Plaintiff filed her motion within 28 days of the entry of this Court's order granting in relevant part Defendants' motion to dismiss, and she has styled her motion as a motion to alter an order. Accordingly, her motion will be treated as a Rule 59(e) motion.

The Fifth Circuit has noted that "Rule 59(e) 'motions cannot be used to raise arguments that could, and should, have been made before the judgment issued.'" *Marseilles Homeowners Condominium Ass'n, Inc. v. Fid. Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). In other words, a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). In this case, the argument now made by Intervenor-Plaintiff is one that could and should have been raised in her opposition to Defendants' motion for partial dismissal. Defendants are correct in noting that her failure to do so justifies the denial of her motion.

More importantly, however, Intervenor-Plaintiff's argument is simply not persuasive.[5]

---

[4] The court in *Shepherd* referred to a 10-day period. *See Shepherd*, 372 F.3d at 328 n.1. This reflects the fact that at the time, Rule 59 contemplated a 10-day period for the filing of a motion to alter or amend a judgment. *See* Fed. R. Civ. P. 59 advisory committee's note. The period has now been extended to 28 days. *See id.*

[5] It should be noted that in a case involving bank fraud, "the financial institution itself . . . is the victim of the fraud." *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992); *accord United States. v. Aubin*, 87 F.3d 141, 146 (5th Cir. 1996). In this case, Intervenor-Plaintiff alleges that the bank that was defrauded was First Community Bank. Yet, Intervenor-Plaintiff

Although the Fifth Circuit does not appear to have had addressed it, the courts that have done so have rejected Intervenor-Plaintiff's contention. Under the federal RICO statute, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of" RICO. 18 U.S.C. 1964(c). The courts have held that in light of this statutory language, "a plaintiff cannot avoid the RICO amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999); *accord Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 618-19 (S.D. Tex. 2003).

    Federal law, the courts have further noted, broadly defines securities fraud as including "any act, practice, or course of business which operates or would operate as a fraud . . . *in connection with* the purchase or sale of any security." 17 C.F.R. § 240.10b-5(c) (emphasis added). As a consequence, if an act of fraud is alleged to be "an integral part of [an overall] securities fraud [or] Ponzi scheme," that act "amounts to securities fraud" and is covered by the RICO amendment. *Bald Eagle*, 189 F.3d at 330; *see also Bixler*, 596 F.3d at 760; *Burton v. Ken-Crest Servs., Inc.*, 127 F. Supp. 2d 673, 677 (E.D. Pa. 2001) (noting that, if "the whole of [the plaintiff's] allegations concern a fraudulent transaction of securities," the plaintiff "cannot magically revive his claim by picking out discrete details of his allegations"). The RICO amendment, together with the expansive definition of securities fraud, precludes plaintiffs from "using artful pleading to boot-strap securities fraud cases into RICO cases." *MLSMK Inv. Co. v.*

---

has also named this bank as a defendant in this case. This is clearly incongruous.

*JP Morgan Chase & Co.*, ___ F.3d ___, 2011 WL 2640579, at *5 (2d Cir. 2011).

In this case, as Intervenor-Plaintiff's amended complaint indicates, the alleged bank fraud was part and parcel of the alleged securities fraud. Intervenor-Plaintiff avers that the defendants used funds from First Community Bank to enable the purchase of the fraudulent securities and that they thereby gave an "appearance of legitimacy" to the unlawful enterprise. Am. Compl. at 10 (Rec. Doc. No. 26). Intervenor-Plaintiff expressly states that the bank fraud and other predicate acts were "connected together" as part of an overall fraudulent scheme. *Id.* at 11. Because the alleged bank fraud was thus "undertaken in connection with the purchase of a security," *Bald Eagle*, 189 F.3d at 330, Intervenor-Plaintiff's argument that her federal RICO claims survive because she has pled bank fraud as a predicate act is unavailing. *See Bixler*, 596 F.3d at 760 (dismissing federal RICO claims formally premised on "mail and wire fraud, bank fraud, extortion, obstruction of justice, and interstate travel in support of racketeering"); *Bald Eagle*, 189 F.3d at 328-30 (dismissing federal RICO claims formally premised on "mail fraud, wire fraud, and bank fraud").

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Intervenor-Plaintiff's Motion to Alter Order (Rec. Doc. No. 46) is hereby **DENIED**.

New Orleans, Louisiana, this 17th day of August, 2011.

_____
UNITED STATES DISTRICT JUDGE